IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| AMY L. SENSTAD, | No. 2:23-CV-2930-DAD-DMC |
|---|---|
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

  Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' briefs on the merits, ECF Nos. 8 and 10.

  The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

1

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Court recommends the Commissioner's final decision be affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

Step 4    If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

2

|   |   |   |
|---|---|---|
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
///
///
///
///
///
///

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on July 7, 2021. See CAR 18.[1] In the application, Plaintiff claims disability began on March 15, 2020. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on March 8, 2023, before Administrative Law Judge (ALJ) Ghermann Magana. In a March 28, 2023, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): rheumatoid arthritis with secondary fibromyalgia and Sjogren's syndrome; right elbow osteoarthritis, status post arthroscopic debridement and synovectomy; and right knee degenerative joint disease.

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.

3. The claimant has the following residual functional capacity: the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as follows: she can lift and carry 20 pounds occasionally and ten pounds frequently; she can stand and walk, with normal breaks, for six hours in an eight-hour workday; she can sit, with normal breaks, for six hours in an eight-hour workday; she can occasionally push and pull with the right upper extremity; she can occasionally climb ramps and stairs, but she must never climb ladders, ropes, or scaffolds; she can frequently reach with the right upper extremity; she can frequently handle with the bilateral upper extremities; she can frequently stoop, and occasionally kneel and crouch, but she must never crawl; and she must avoid occasional concentrated exposure to extreme cold.

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform her past relevant work as a display designer and set designer.

See id. at 20-33.

After the Appeals Council declined review on October 26, 2023, this appeal followed.

///

///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on February 8, 2024, ECF No. 6.

## III.  DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ failed to properly evaluate Plaintiff's subjective statements and testimony; and (2) the ALJ failed to explain inconsistencies between the vocational expert's testimony and the definitions contained within the Dictionary of Occupational Titles (DOT).

### A.  **Evaluation of Plaintiff's Subjective Statements and Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

///

5

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

At Step 4, the ALJ evaluated Plaintiff's subjective statements and testimony in determining Plaintiff's residual functional capacity. See CAR 26-31. The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant alleged disability due to pain in her right elbow and right wrist, as well as swelling in her fingers and pain in her shoulders. She claimed that at times, she cannot lift her arms to even comb her hair. In addition, she stated that her right knee is not in good shape, and she had surgeries in her knees in the 1990's. She further indicated her right foot has recently developed problems since last spring, which caused her difficulties when she visited Switzerland. The claimant indicated that the pain in her right dominant upper extremity feels like a deep throbbing ache in the elbow, and a sharp, stabbing pain if moved in certain ways, and she takes medications every day for the pain, although she indicated it is fine when standing and the elbow is straight down. She claimed she is unable to bend her wrist backwards or forwards, and her fingers are swollen, jammed, and dislocate if they are touched in certain ways, which is especially bad in the thumbs. She claimed that if she tries to work on the computer, she can ignore her pain for a little while, but in less than an hour her upper extremities stiffen up, and the pain is throbbing. She stated that her interior and lighting design jobs required her to work with architectural drawings, and she needed to draw, scale, and make presentations.

///

///

The claimant also testified that from October through December 2022, she could only limp, and at some point, she needed help from strangers to get to transportation because she could no longer walk. She claimed she is very unstable, her gait is not proper, and standing becomes tiring very quickly, such that she can stand only 15-20 minutes at the most before she must sit down, and she must constantly hold onto something for balance. With respect to lifting and carrying, the claimant indicated that she has a neighbor bring her cat carrier to the car because she is worried about dropping it, as she drops things every day and because her hands are numb, she thinks she is holding something, but she is not. She also stated that she has problems brushing her teeth, combing her hair, getting dressed, and no longer uses knives due to problems with her hands and shoulders. She claimed she has gardeners that mow the lawn, but she can tend to the smaller plants, and she can manage a raised bed vegetable garden. She attributed her mental difficulties to past steroid use, which she had to use for arthritis. She claimed this has caused anxiety, and impacts her ability to be calm or focus, and it is her pain that is involved in triggering her depression and anxiety. She stated that she has difficulty handling stress and changes on the job. However, she described her depression as "smaller" than her anxiety, which she stated was "the main ticket". Indeed, the claimant testified that she primarily takes Ibuprofen for her pain which helps, but she also takes Vicodin sometimes or on rare occasion she takes liquid Oxycontin which she has had since 2010. She reportedly has ice packs for her fingers and wrists, and she has a wrist brace and slings for her elbow, shoulders, and knee, which she uses every week. She stated that she receives a Methotrexate shot every week, which does not allow her to drink alcohol, and she thinks it might contribute to her fatigue. However, as noted, the claimant also testified that she travelled to Switzerland in July 2022 for 7-8 days to do some design work for Disney and she went there in November and December 2022 for almost 3 weeks to supervise the installation (Testimony).

CAR 26-27.

The ALJ concluded as follows:

The subjective statements about the intensity, persistence, and limiting effects of the claimant's symptoms, are not fully consistent with the objective medical evidence, as the allegations are simply not completely borne out by the objective examinations and treatment history, which does do not persuasively support greater limitations. Further, the Administrative Law Judge notes that no examining or reviewing physician has rendered an opinion supporting that the claimant is incapable of all light work. In fact, the opinions find her to be much more capable than she claims. In addition, she takes essentially over-the-counter medications for pain (Testimony), drives, and appears capable of essentially most activities of daily living.

CAR 28.

///

///

///

1          The ALJ then discussed Plaintiff's statements and testimony in the context of the objective findings. See id. at 28-30. This lengthy discussion is not repeated here. The ALJ specifically commented on treatment notes from Kaiser Permanente, contained with the record at Exhibit 10F:

> Further, on October 19, 2022, the claimant reported that she would be traveling for work November 24 through December 7, and she was to leave "at the end of the month for a 2-week install" where she would have "tons of necessary walking" and would have "12 days of hard walking and some climbing" (Exhibit 10F at 160-161). On December 1, 2022, the claimant also told her provider that she injured her left foot with all the extensive walking done on her business trip, and she still had three days of work the next week in Zurich (Exhibit 10F at 249).

CAR 30.

The ALJ concluded the analysis as follows:

> The above evidence suggests the claimant's symptoms and limitations are not as severe as she alleged. Further, it appears that despite her impairments, the claimant has engaged in a somewhat normal level of daily activity as set forth above. In short, the claimant's activities are reasonably normal and tend to show that she does have the ability to perform basic work functions. While activities of daily living do not prove the claimant's ability to perform work activity, neither do they support her allegations of the lack of ability to perform basic work functions.
>
> Indeed, the undersigned considered the claimant's statements of symptoms in view of the SSR 16-3p factors, which are addressed where most relevant throughout this decision (*e.g.* inconsistency of her statements and the statements/findings of medical providers, course of treatment, daily activities such as driving, traveling, or generally reporting being active, medications and their effectiveness and side effects). The Administrative Law Judge finds that these factors support the claimant's statements in some respects (*e.g.* some regularity of treatment) but are inconsistent in other respects (improvement with treatment, physical examination findings, the nature and extent of her complaints at therapy, and her activities). In sum, however, these factors do not weigh heavily enough to overcome the preponderance of the evidence, including objective medical evidence and medical opinions from those with expertise in our agency, which supports the residual functional capacity described above.

CAR 31.

Plaintiff argues that the ALJ improperly supported the analysis with references to the objective medical evidence which do not link such evidence to any particular portion of Plaintiff's statements or testimony found to not be entirely consistent with the evidence. See ECF No. 8-1, pgs. 5-6. Plaintiff also argues that the ALJ erred in applying a "preponderance of the

8

evidence" standard instead of a "clear evidence" standard. See id. at 6. Finally, Plaintiff asserts that the ALJ improperly relied on Plaintiff's limited activities of daily living which do not translate to the ability to perform full-time work on a sustained basis. See id. at 6-7.

Notably absent from Plaintiff's brief is any argument concerning the ALJ's citation to Plaintiff's reports of extensive international travel. The ALJ referenced Plaintiff's statements to her treating providers at Exhibit 10F of the record. See CAR 30. This exhibit reflects that, in October 2022, Plaintiff informed Dr. Libed that she would be traveling to Zurich in November 2022 to install an interior design project "with 12 days of hard walking and some climbing. . . ." CAR 1237 (Exhibit 10F, pg. 160). Later, on December 1, 2022, Plaintiff informed Dr. Libed that she had injured her foot "with all the extensive walking" done on her business trip and that she expected to be continuing her work in Zurich for three more days. CAR 1326 (Exhibit 10F, pg. 249). Plaintiff sought referral to a podiatrist in Zurich. See id.

These statements made by Plaintiff to her treating physician stand in stark contrast to Plaintiff's statements and testimony that she is totally disabled. As explained above, the ALJ is permitted to rely on a claimant's own inconsistent statements to discount subjective testimony of disability. See Smolen, 80 F.3d at 1284. Additionally, even accepting that the "clear and convincing" standard applies, the evidence of Plaintiff's inconsistent statements provide such evidence to support the ALJ's determination.

**B.    Inconsistency with the Dictionary of Occupational Titles**

For Social Security benefits hearings, the Dictionary of Occupational Titles (DOT) is the default presumption for disability classifications. Massachi v. Astrue, 486 F.3d 1149, 1150 (9th Cir. 2007). Moreover, the ALJ has an affirmative responsibility to ask about any possible conflict between vocational expert evidence and information provided in the DOT. Id. The ALJ may, however, rebut the presumption of applicability of the DOT when expert testimony exists that is supported by persuasive evidence contradicting the DOT. See Murry v. Apfel, 1999 U.S. App. LEXIS 28911, 1, 9 (9th Cir. 1999) (holding that the Administrative Law Judge is not bound by the DOT descriptions but can instead rely on the testimony of the vocational expert and own findings specific to the individual plaintiff before the Administrative Law Judge); see also Tackett

v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (holding that the ALJ can rely on vocational expert's testimony as to (1) the jobs a claimant can work in given the limitations and residual functional capacity and (2) the availability of these jobs on a national scale); see also Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (concluding that vocational experts have the authority to testify whether a particular plaintiff would be able to perform specific jobs within DOT subcategories); Distasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995); see also Barker v. Secretary of Health and Human Svcs., 882 F.2d 1474, 1478 n.1 (9th Cir. 1989) (holding that a plaintiff restricted to sedentary work is not automatically barred from performing all "light" jobs when plaintiff was still capable of performing a subcategory of "light" jobs); see also Terry v. Sullivan, 903 F.2d 1273, 1277 (9th Cir. 1990).

At Step 5, the ALJ obtained vocational expert testimony to determine Plaintiff's vocational capacity. See CAR 32-33. The ALJ stated as follows:

> The vocational expert referenced a publication called *The Dictionary of Occupational Titles* (DOT); this guide describes the work requirements of thousands of jobs as they are generally performed. Ms. Bohne testified that the claimant has past work experience as follows: Display Designer (DOT 142.051-010), which is classified sedentary, skilled work with a Specific Vocational Preparation level ("SVP") of seven, as generally performed, but actually performed in the heavy exertional range; and Set Designer (Lighting Design) (DOT 142.061-050), which is classified as light, skilled work with an SVP of eight, as generally and actually performed.
>
> As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance and was performed within the relevant period. Indeed, the claimant testified that she worked as a Display Designer full-time for at least two years from 2008-2010 as required by SVP seven and nothing in her testimony indicated that she did not learn the techniques, acquire the information, and develop the facility needed for average performance in the specific job-worker situation; in fact, testimony indicated she was quite proficient. Further, the claimant worked as a Set Designer for at least six years per the earnings record (Exhibits 3D, 4D, and 7D), and possibly more per the claimant's testimony. Again, nothing in the testimony indicated that she did not learn the techniques, acquire the information, and develop the facility needed for average performance the specific job-worker situation. Indeed, testimony indicated she was quite proficient at this job. As such, the undersigned finds both jobs constitute past relevant work.

/ / /

/ / /

> Further, the vocational expert stated that an individual with the claimant's vocational profile and residual functional capacity could perform the job of Set Designer, both as the claimant performed it and as it is generally performed in the national economy, and she could perform the job of Display Designer as generally performed in the national economy, but not as actually performed by the claimant.
>
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles and her training, education, and experience in the field where the DOT is silent. Specifically, while the DOT does not distinguish between the different types of reaching and the weight distribution between dominant and non-dominant hands, the undersigned finds the vocational expert's testimony is not in direct conflict with the information provided in the DOT, and she applied her knowledge, training, and experience to her findings. Accordingly, the undersigned accepts the vocational expert's opinion. There is nothing in the established residual functional capacity that appears to conflict with the demands of the claimant's past relevant work as a Set Designer as actually and generally performed, and as a Display Designer as generally performed. Therefore, the Administrative Law Judge finds that the claimant is able to perform past relevant work.

CAR 32-33.

Plaintiff argues that the ALJ erred by failing to address the inconsistency between the DOT's definition of Display Designer, which is sedentary and light work as generally performed, and the way in which Plaintiff actually performed such work at the heavy exertional level. See ECF No. 8-1, pgs. 7-10. Plaintiff's argument is without merit. Plaintiff focuses on an inconsistency regarding how the job of Display Designer, described by the DOT as light and/or sedentary work, is performed and how she actually performed the occupation. The ALJ, however, made the specific finding, based on the vocational expert's testimony, that Plaintiff can perform the job of Display Designer as that job is generally performed in the national economy at the light/sedentary level per the DOT, but not as actually performed by Plaintiff in the past at the heavy level. Given this record, the Court finds that the ALJ adequately resolved any inconsistency with the definitions in the DOT and based the vocational finding at Step 5 on substantial evidence in the form of vocational expert testimony.

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for summary judgment, ECF No. 8, be denied;

2. Defendant's cross-motion for summary judgment, ECF No. 10, be granted; and

3. The Commissioner's final decision be affirmed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 26, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE